# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAWRENCE STUART,                    :
            Plaintiff,          :          1:14cv-1401
                              :
    v.                                           :          Hon. John E. Jones III
                              :
DOCTOR LISIAK, *et al.*,            :
            Defendants        :

## <u>MEMORANDUM</u>

## September 10, 2015

Plaintiff, Lawrence Stuart ("Stuart"), a state inmate currently confined at the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), Frackville, Pennsylvania, commenced this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Presently pending is a motion (Doc. 26) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Corrections Defendants Karen Holly ("Holly"), John Kerestes ("Kerestes"), John Steinhart ("Steinhart"), and Donna Varner ("Varner"). For the reasons that follow, the Corrections Defendants' motion to dismiss will be granted.

Also before the court is a motion (Doc. 28) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed by Defendants Barb Coogan ("Coogan"), Nelson Ianuzzi ("Ianuzzi"), Melissa Kranch ("Kranch") and Dr. John

Lisiak ("Lisiak"). The motion to dismiss filed by Coogan, Ianuzzi, Kranch and Lisiak will be denied. The motion for summary judgment, however, will be granted.

Additionally, the complaint against Defendant DeRojas will be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

We shall discuss each Motion in turn hereinbelow.

## I. MOTIONS TO DISMISS

### A. Standard of Review

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A district court ruling on a motion to dismiss generally "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679); *see also* 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

In addition, because Stuart complains about "prison conditions," and is proceeding *in forma pauperis*, the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e)(2). The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000).

B.    Allegations of the Complaint

Stuart alleges that he was seen by Defendant Lisiak numerous times about his "hernia matter," and that over the course of years, Lisiak denied him medical treatment.  (Doc. 1, pp. 2, 5).  Specifically, Lisiak denied him surgery until the pain became unbearable and he was placed in a life threatening situation.  (*Id.* at 4).   On July 20, 2012, hernia surgery was performed by Defendant DeRojas at an outside hospital.  (*Id.* at 5).  After the surgery, Stuart asked Defendant DeRojas about a "knot."  (*Id.*)  Defendant DeRojas indicated that the knot would "go down."  (*Id.*)

Stuart claims that after he returned to SCI-Mahanoy he continued to experience problems and pain.  (*Id.*)  He indicates that the"knot" did not reduce in size and that Defendants Lisiak, Iannuzi, Kranch, and Coogan, refused him treatment on various dates in 2013.  (*Id.* at 4, 5).

Stuart also alleges that Defendants Holly, Kerestes, Varner and Steinhart failed to intervene and "are personally involved and all responded to my grievance process denying me medical treatment at SCI-Mahanoy where I got serious medical condition that requires immediate surgery and they refuse to supervise their subordinates."  (*Id.* at 4).

C.    Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials. *See* 42 U.S.C. §

1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v.*

*Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a

plaintiff must allege "the violation of a right secured by the Constitution and

laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487

U.S. 42, 48 (1988).

Individual liability will be imposed under Section 1983 only if the

state actor played an "affirmative part" in the alleged misconduct. *See*

*Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be

predicated solely on the operation of respondeat superior." Id. In other

words, defendants in Section 1983 civil rights actions "must have personal

involvement in the alleged wrongs . . . shown through allegations of personal

direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316

F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. When a plaintiff

merely hypothesizes that an individual defendant may have had knowledge

of or personal involvement in the deprivation of his or her rights, individual

liability will not follow. *Atkinson*, 316 F.3d at 271; Rode, 845 F.2d at

1207-08.

     The Corrections Defendants move to dismiss the complaint based on

Stuart's failure to allege personal involvement.[1]  They argue that "[t]he

totality of Plaintiff's allegations against the Corrections Defendants, all of

whom share supervisory responsibilities, is that they refused to intervene and

ensure he received the medical treatment he desired by affirmatively

responding to grievances filed."  (Doc. 27, p. 4, citing Doc. 1).  A state

prisoner's allegation that prison officials and administrators responded

inappropriately, or failed to respond to a prisoner's complaint or an official

grievance, does not establish that the officials and administrators were

involved in the underlying allegedly unconstitutional conduct. *See Rode*,

845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is

---

[1]"[P]laintiff does conceed [sic] that "Defendant Donna Varner" be <u>granted</u> dismissal as a defendant from this action."  (Doc. 33, pp. 6, 16).

insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *see also Croom v. Wagner*, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dept. of Corrections*, No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Hence, Stuart's claim against the Corrections Defendants, which solely arises out of the alleged failure to intervene in his medical treatment based on the information contained in the grievances, and the failure to satisfactorily resolve his prison grievances, will be dismissed.

With respect to Defendant DeRojas,[2] Stuart states that Defendant DeRojas, the surgeon that performed the hernia surgery, "was not acting under color of state law, but in performing said surgery was using his own judgment." (Doc. 33, p. 15). "[S]tate action is a threshold issue in any

---

[2]Defendant DeRojas was never served. A request for waiver of service was returned on September 24, 2014, with a notation "unable to serve, no address/hospital provided." (Doc. 14).

section 1983 case." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir.1997). The Third Circuit Court of Appeal has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)) (internal quotations omitted). "Under any test, '[t]he inquiry is fact specific.'" *Id.* (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir.1995)). "[T]he essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state." *Bonenberger*, 132 F.3d at 24.

In *West v. Atkins*, 487 U.S. 42 (1988), the Supreme Court held that a private physician, who contracted to perform services on a part-time basis to a state prison within the prison confines, acted under of color of state law for purposes of a § 1983 claim. Conversely, a private physician does not act

under the color of state law in allegedly failing to provide proper medical treatment, where, as here, the physician provides the medical services in a non-prison hospital, and the physician is not a prison employee or under contract to render medical services to prison inmates. *See, e.g., Nunez v. Horn*, 72 F.Supp.2d 24, 27 (N.D.N.Y.1999) (distinguishing West and finding that a private physician who treated a prisoner without a contract and off the prison grounds did not act under color of state law for purposes of § 1983). Stuart identifies Defendant DeRojas as a private physician who performed his hernia surgery in a non-prison hospital. Thus, one can reasonably conclude that Defendant DeRojas is not a state actor for purposes of imposing liability under 42 U.S.C. § 1983. Accordingly, the complaint against him will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Defendants Lisiak, Iannuzi, Coogan and Kranch move to dismiss the complaint on the ground that Stuart fails to set forth facts that would suggest a violation of the Eighth Amendment. (Doc. 29, p. 2). There is no doubt that the Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–105 (1976). For the delay or denial of medical care to rise to a violation of the Eighth

Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. A medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (1987) (citations omitted).

Stuart alleges that he was seen by Defendant Lisiak numerous times about his "hernia matter," and that Lisiak denied him surgery until the pain became unbearable and he was placed in a life threatening situation. (Doc.

1, pp. 2, 4, 5).  He claims that following hernia surgery, he continued to experience problems and pain and that Defendants Lisiak, Iannuzi, Coogan and Kranch refused to treat him on various dates in 2013.  (*Id.* at 4, 5).  These allegations that Defendants Lisiak, Iannuzi, Coogan and Kranch denied and delayed medical treatment for his hernia condition are sufficient to state an Eighth Amendment claim in that they adequately set forth that defendants were deliberately indifferent to his serious medical needs.  Consequently, the motion to dismiss filed by Defendants Lisiak, Iannuzi, Coogan and Kranch will be denied.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in

original).  A disputed fact is "material" if proof of its existence or

nonexistence would affect the outcome of the case under applicable

substantive law.  *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078

(3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.

*Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of*

*Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing

the absence of a genuine issue as to any material fact.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the

non-moving party must go beyond the pleadings with affidavits, depositions,

answers to interrogatories or the like in order to demonstrate specific

material facts which give rise to a genuine issue.  FED. R. CIV. P. 56;

*Celotex*, 477 U.S. at 324; *Matsushita Electric Industrial Co. v. Zenith Radio*,

475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more

than simply show that there is some metaphysical doubt as to the material

facts").  The party opposing the motion must produce evidence to show the

existence of every element essential to its case, which it bears the burden of

proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). The nonmoving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Service*, 214 F.3d 402, 407 (3d Cir. 2000). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

B.    Statement of Material Facts

"A motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts . . .  as to which the moving party contends there is no genuine issue to be tried." *See* L.R. 56.1. The opposing party shall file a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. *Id.* The statement of material facts must

specifically respond to the numbered paragraphs in the opposing party's statement of material facts and shall include specific references to the parts of the record that support the statements. *Id.* "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." *Id.* Stuart did not file a separate statement of material facts. Instead, he includes in his brief in opposition, a "statement of alleged facts." (Doc. 33, pp. 2-8). This statement does not meet the requirements of the Local Rules in that it does not specifically respond to the defendants' statement and does not include any record citations or references. Instead, it primarily supports his request to amend his complaint and the allegations he would include in a proposed amendment, which has been denied by separate order of court. Consequently, the material facts contained in Defendants' statement are largely deemed admitted.

At all times relevant, Stuart was incarcerated at SCI-Mahanoy. (Doc. 28, ¶ 2). He underwent hernia surgery on July 20, 2012, which was performed by Defendant DeRojas. (*Id.* at ¶ 3). Five months later, on December 21, 2012, Stuart complained to the medical department of left testicular firmness and enlargement. (*Id.* at ¶ 4). He reported to the nurse,

"they told me it was from blood in area from surgery, but it's getting bigger." (*Id.*) He denied pain to the area. (*Id.*) An ultrasound was ordered. (*Id.*)

Stuart returned to the medical department on January 24, 2013, at which time the medical staff informed him that the ultrasound revealed an abnormality of the left testicle, perhaps secondary to inflammatory process. (*Id.* at ¶¶ 7-8). He was seen by Defendant Iannuzi on February 6, 2013, at which time, he did not complain of testicular pain or discomfort. (*Id.* at ¶ 12-13). He advised Defendant Iannuzi, "I feel fine. I want to play basketball. I want to play sports." (*Id.* at ¶ 13).

He was prescribed two different antibiotics, Doxycycline and Levaquin, from February 7, 2013 through March 1, 2013, and was given an antibiotic injection on February 22, 2013. (*Id.* at ¶¶ 9-10). Also, blood testing that was done on February 11, 2013. (*Id.* at ¶ 11). It was unremarkable. (*Id.*)

On May 6, 2013, Stuart complained of intermittent scrotal pain, but denied being in pain at that time. (*Id.* at ¶ 14). Examination of the left testicle revealed no tenderness on palpation; however, the testicle was enlarged. (*Id.* at ¶ 15). Based upon these findings, the physician ordered a

second ultrasound and advised Stuart that if a persistent abnormality was identified on the films, he would be referred to a specialist.  (*Id.* at ¶ 16).

The ultrasound was administered on May 21, 2013, and the results, which were reviewed with the patient two days later, revealed  a heterogeneous area within the left testicle, which prompted a recommendation for a consultation with the original surgeon, Defendant DeRojas.  (*Id.* at ¶¶ 17-18).  On June 20, 2013, Stuart was examined by DeRojas, who reported "I do not feel any recurrent hernia but on the *vas deferens* right above the testicle he's got a loculated mass." (*Id.* at ¶¶ 19-20). It was suspected that he had a recurrent hydrocele and surgical intervention was recommended.  (*Id.* at ¶ 21).

On July 10, 2013, Defendant Lisiak discussed the surgical plan with Stuart.  (*Id.* at ¶ 22).  Stuart refused to have Defendant DeRojas perform the surgery.  (*Id.* at ¶ 23).  He continued to oppose performance of the surgery by DeRojas in the weeks that followed.  (*Id.* at ¶¶ 24-26).

During an August 15, 2013 visit, based on reports by Stuart of discomfort, Defendant Lisiak renewed his Motrin prescription.  (*Id.* at ¶ 27). On August 21, 2013, Stuart reported to sick call with complaints of pain in his scrotum, but refused to allow either the nurse of Defendant Iannuzi to

examine him.  (*Id.* at ¶¶ 28-29).

During his biennial physical examination on September 25, 2013, Stuart reported continued left testicular pain.  (*Id.* at ¶ 30).  Upon examination, his testicle was noted to be very tender to light palpation and was only partially descended.  (*Id.* at ¶ 31).  He was instructed to wear an athletic supporter to protect his testicle, and was prescribed antibiotics and Ibuprofen.  (*Id.* at ¶ 32).  In subsequent visits, he indicated that he would not wear the athletic supporter, but agreed to wear briefs instead of boxers.  (*Id.* at ¶ 33).  Stuart was last seen by the medical department on March 26, 2014, at which time he walked out of sick call and refused an examination.  (*Id.* at ¶ 34).

C.    Discussion

As noted *supra*, for the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse*, 182 F.3d at 197.  It is undisputed that Stuart suffered from a serious medical condition.  Defendants do, however, dispute that they were deliberately indifferent to that condition.

Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle*, 429 U.S. at 105–06.

It is well-settled that no claim of deliberate indifference is made out where a significant level of care has been provided, and all that is shown is that the prisoner disagrees with the professional judgment of a physician, or that a different physician has, in the past, taken a different approach to the

prisoner's treatment. *Estelle*, 429 U.S. at 105–06, 107 (finding that "in the medical context, . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *Parham v. Johnson*, 126 F.3d 454, 458 n. 7 (3d Cir. 1997) (recognizing "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference' "); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (same). *See also Taylor v. Norris*, 36 F. App'x. 228, 229 (8th Cir. 2002) (finding that deliberate indifference claim failed because it involved a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); *AbdulWadood v. Nathan*, 91 F.3d 1023, 1024–35 (7th Cir. 1996) (holding that an inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); *Sherrer v. Stephen*, 50 F.3d 496, 497 (8th Cir. 1994) (concluding that inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993) (inmate's mere disagreement with doctor's informed decision to delay

surgery does not establish Eighth Amendment claim).

Viewing the evidence in the light most favorable to Stuart, he has failed to demonstrate a genuine issue of material fact on the issue of deliberate indifference. Stuart specifically disputes the manner in which he was treated for his hernia condition. The Third Circuit has stated that " '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law'." *United States ex rel. Walker v. Fayette Cnty*, 599 F.2d 573, 575 n. 2 (3d Cir.1979) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976)). This is clearly a case where the inmate has received significant medical treatment and he is disputing the adequacy of that treatment. Stuart received medication to alleviate pain and discomfort. He was prescribed antibiotics when deemed appropriate. Diagnostic testing was performed when warranted by physical examinations and in response to Stuart's complaints Blood testing was administered. One surgery was performed. A second surgery is recommended, but Stuart is refusing the surgery. It is clear from the medical record that from the time of his surgery on July 20, 2012, up until March 26, 2014, he received prompt and adequate

medical treatment every time he presented to the medical department. Stuart fails to come forward with evidence that any of the medical Defendants possessed the requisite mental intent required to establish an Eighth Amendment claim. *See Farmer*, 511 U.S. at 825; *Durmer*, 991 F.2d at 69, n. 13 (stating that a plaintiff must demonstrate a genuine issue of material fact regarding the requisite mental intent to overcome summary judgment). Consequently, Defendants' motion for summary judgment will be granted.

## IV.   CONCLUSION

Based on the foregoing, the motion (Doc. 26) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the Corrections Defendants will be granted. The motion (Doc. 28) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Coogan, Ianuzzi, Kranch and Lisiak will be denied. The motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed by Defendants Coogan, Ianuzzi, Kranch and Lisiak will be granted. The complaint against Defendant DeRojas will be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

A separate order will enter.